[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE SECOND SPECIAL DEFENSE
CT Page 3618
In the complaint in this action the plaintiff, Craig Davis, alleges that he suffered injuries when a vehicle operated by the defendant, Hak Kim, struck him while he was acting in his official capacity as a Wethersfield police officer directing traffic in a construction zone. In their Second Special Defense the defendants Hak Kim and Sung Kim, allege:
 If the plaintiff suffered any injuries and/or damages as alleged in his complaint, said injuries and damages were incurred and incident to plaintiff acting in his official capacity as a duly-authorized Town of Wethersfield police officer, directing traffic through a construction zone: accordingly plaintiff's action in negligence is barred by the "Firefighters Rule" (The defendants cannot be held liable to the plaintiff for risks that inhered in his presence as a police officer directing traffic through a construction zone.)
The plaintiff has moved to strike the Second Special Defense on the ground that the so-called firefighter's rule applies only in situations where the fireman or policeman enters the premises of the defendant without the knowledge of the defendant. The plaintiff cites Furstein v. Hill, 218 Conn. 610, 590 A.2d 939
(1991), in support of the foregoing argument. However, the Court in Furstein did not limit the firefighter's rule to premises liability cases.
In Furstein the plaintiff, a West Hartford police officer, brought an action to recover damages for personal injuries that he suffered as the result of investigating a possible burglary at a house owned by the defendant. At the close of the plaintiff's evidence, the defendant moved for a directed verdict on the theory that the plaintiff had not provided a factual foundation to demonstrate her failure to comply with the duty of care owed by a landowner to a licensee. The trial court, denied the motion and submitted the case to the jury, which returned a verdict for the plaintiff reduced in amount by its finding that the plaintiff himself had been 40 percent negligent. The defendant appealed and the Court reversed the judgment of the trial court because it concluded that the defendant's motion for directed verdict should have been granted.
The Court in Furstein observed that "Although the rule had its origins in a social system in which `the landowner was CT Page 3619 sovereign within his own boundaries' and owed a licensee only the duty not to injure him wilfully or wantonly; Dini v. Naiditch,20 Ill.2d 406, 413, 170 N.E.2d 881, (1960); the jurisdictions that have applied the rule in recent years have offered more cogent reasons to justify its continued viability." The Court further stated:
 Several jurisdictions have explained their adoption of the firefighter's rule by recognizing the inherently hazardous nature of the public safety work performed by firefighters and police officers. Some courts have characterized this recognition as a variant of the doctrine of "assumption of the risk"; see Krauth v. Geller, 31 N.J. 270, 273-74, 157 A.2d 129 (1960); while others have noted that firefighters and police officers voluntarily choose to enter their professions knowing that they will often confront physically perilous situations created by the negligence of the public they serve. See Winn v. Frasher, 116 Idaho 500, 503, 777 P.2d 722 (1989). According to the courts that have relied on this rationale, the public "hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations," many of which are caused by negligence. Kreski v. Modern Wholesale Electric Supply Co., supra, 366. "The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public . . . [T]he public should not be liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill." Id., 367-68.
 This rationale has been extended to situations, such as the one presented in this case, in which an injury results from alleged negligence that is unrelated to the cause of the safety officer's presence on the property. The Supreme Court of New Jersey recently held that a police officer who was injured when he slipped on a powdery white substance on a doughnut shop's kitchen floor while he was rendering emergency medical aid to an employee of the shop could not recover in tort against the shop's owners or operators. Rosa v. Dunkin' Donuts of Passaic, 122 N.J. 66, 583 A.2d 1129 (1991). The court reasoned that "[f]irefighters and police officers must be held to assume the risks that are to be expected in encountering the hazards and risks of their job. . . . Such risks properly include an ordinary act of negligence that an officer may encounter at the scene of the incident. To hold otherwise creates artificial distinctions between the negligence that occasioned one's presence and the CT Page 3620 negligence defining the scene at which one arrives . . ." Id., 73-74.
 A third rationale offered by courts that have adopted the firefighter's rule is that permitting firefighters and police officers to recover in tort for occupational injuries caused by the negligence of particular members of the public whom the officer is called upon to aid would impose a double burden on the taxpayers, who already pay such officers to deal with the hazards that may result from the taxpayers' own future acts of negligence. "Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." Berko v. Freda, supra, 87-88. To avoid this potential for double liability, in taxes and in tort, most courts have concluded that the public as a whole, rather than individual landowners, should bear the burden of the foreseeable losses incurred when firefighters or police officers are injured in the performance of their duties. As more than one court has observed, the public should compensate its safety officers both in pay that reflects the hazard of their work and in workers' compensation benefits for injuries suffered when the risks inherent in the occupation materialize. Giorgi v. Pacific Gas Electric Co., 266 Cal.App.2d 355, 359-60, 72 Cal.Rptr. 119 (1968); Krauth v. Geller, supra, 274.
 Reliance on workers' compensation and other forms of public compensation is also appropriate because "societal responsibility rather than possible tort recovery is the better, surer, and fairer recourse" for a public safety officer injured in the line of duty. Flowers v. Sting Security, Inc., 62 Md. App. 116, 140, 488 A.2d 523 (1985), affd, 308 Md. 432, 520 A.2d 361 (1987); England v. Tasker, 129 N.H. 467, 470, 529 A.2d 938 (1987). As one court noted, "the reach of the tax collector is both broader and more persuasive than that of the premium taker." Giorgi v. Pacific Gas Electric Co., supra, 360. In addition, courts have noted that society's recognition of the inherently hazardous nature of the work of public officers has frequently led to the enactment of special benefits for such workers, above and beyond the benefits ordinarily provided by workers' compensation. See Walters v. Sloan, 20 Cal.3d 199, 205, 571 P.2d 609, 142 Cal.Rptr. 152 (1977). Such benefits include, for instance, a statutory presumption of occupational causation for certain diseases; see General Statutes 7-433a (creating a presumption that hypertension or heart disease is a personal injury that arose in the course of employment); and survivors' CT Page 3621 benefits for the dependents of police officers and firefighters. See General Statutes 7-323e.
218 Conn. at 217-220.
Thus while the facts of Furstein involved injury to a police officer which occurred on the defendant's premises, the Court did not limit the application of the rule to premises liability cases. From the Court's foregoing discussion it appears that the firefighter's rule is applicable to any situation where the injury of a policeman or fireman arises from the "inherently hazardous nature" of his duties.
In Kaminski v. Fairfield, 216 Conn. 29, 578 A.2d 1048 (1990) the trial court granted a motion to strike the counterclaim filed by a police officer who was injured by a mental patient while the police officer was assisting in the transportation of the patient. The Supreme Court affirmed the trial court's ruling stating:
 [T]he plaintiffs cannot be held liable to the defendant for risks that inhered in his presence, as a police officer acting as a trained escort for a mental health team on a visit to a disturbed patient known to be agitated and to have access to axes.[4] "[F]undamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement . . . This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." Berko v. Freda, 93 NJ. 81, 87, 459 A.2d 663
(1983) (a police officer injured in the pursuit of a stolen car cannot sue the car owner for negligence in leaving the car with keys in the ignition). In accordance with this principle, a police officer has been precluded from suing parents for negligence when he was assaulted by intoxicated guests at a party after having been summoned to quell the disturbance. Walters v. Sloan, 20 Cal.3d 199, 202-205, 571 P.2d 609, 142 Cal.Rptr. 152
(1977). Similarly, a police officer struck by another car while assisting a truck driver to gather fallen cargo was not allowed to sue the truck driver for having negligently secured his freight. Steelman v. Lind, 97 Nev. 425, 427-28, 634 P.2d 666
(1981); see also Flowers v. Rock Creek Terrace Limited
CT Page 3622 Partnership, 308 Md. 432, 447, 520 A.2d 361 (1987); Turner v. Northwest General Hospital, 97 Mich. App. 1, 3-4, 293 N.W.2d 713
(1980); F. Harper, F. James O. Gray, supra, 27.14(2); W. Prosser W. Keeton, supra, 60-61, pp. 413, 431.(fn5)]
216 Conn. at 38-39.
While the Court in Furstein did not cite Kaminski, and the Court in Kaminski did not use the term "firefighter's rule", both cases cite Berko v. Freda, 93 NJ. 81, 87, 459 A.2d 663 (1983);Walters v. Sloan, 20 Cal.3d 199, 202-05, 571 P.2d 609,142 Cal.Rptr. 152 (1977); and Flowers v. Rock Creek Terrace LimitedPartnership, 308 Md. 432, 447, 520 A.2d 361 (1987) for the proposition that "fundamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement."
Based on the foregoing it does not appear that the firefighter's rule is inapplicable as a matter of law here and the Motion to Strike the Second Special Defense is, therefore, denied.
By the court,
Aurigemma, J.